## Young *v.* Mercantile Steam Laundry Company, Appellant.

*Negligence—Master and servant—Laundry—Injury to feeder of a mangle.*

In an action to recover damages for personal injuries against an employer by a girl employed in a laundry as a feeder to a mangle, the case is for the jury where the evidence for the plaintiff, although contradicted in nearly every particular, tends to show that at the time of the accident, the mangle was not in working order, but in bad condition; that the equalizing rod was missing, the belt in wrong position, the pulleys too small, the guard warped and unsafe, and the driver too short, thereby causing the machine to jerk and the hand of the feeder likely to be drawn into the machine; that the mangle had to be adjusted some days fifteen or twenty times; that the speed of the mangle was not under the control of the head feeder as it should have been, and the sudden acceleration of speed was likely to draw in the hand of the feeder; that it was the sudden increase of speed that drew the plaintiff's hand into the mangle; that the unsafe condition of the machine was known to the defendant; and that it was not until after defendant's manager had assured plaintiff that its defective condition had been remedied, after she had complained, that she, relying upon his assurance, resumed her work.

Argued Jan. 10, 1901. Appeal, No. 224, Jan. T., 1900, by defendant, from judgment of C. P. No. 3, Phila. County, Dec. Term, 1899, No. 243, on verdict for plaintiff, in case of Jennie Young v. Mercantile Steam Laundry Company. Before Mc-Collum, C. J., Mitchell, Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Trespass for personal injuries. Before McMichael, J.

The facts are stated at length in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $4,500. Defendant appealed.

*Error assigned* was in refusing to give binding instructions for defendant.

*Richard P. White*, with him *Joseph H. Taulane*, for appellant. —It is submitted that this case is ruled by Higgins v. Fanning & Co., 195 Pa. 599, and that the judgment should be reversed.

*Thomas A. Fahy*, for appellee.—The case of Higgins v. Fanning & Co., 195 Pa. 599, relied upon by the defendant, is to be distinguished from the present case in this very particular, that, in that case, the plaintiff failed to prove that the defendant had been negligent.

This case was for the jury: Patterson v. Pittsburg, etc., R. R. Co., 76 Pa. 389; McCombs v. Pittsburg, etc., Ry. Co., 130 Pa. 182; Bier v. Standard Mfg., 130 Pa. 446; Bannon v. Lutz, 158 Pa. 166; Bonner v. Pittsburg Bridge Co., 5 Pa. Superior Ct. 281; Honifius v. Chambersburg Engineering Co., 196 Pa. 47; Cargill v. Phila. Towel Supply Co., 185 Pa. 269; Fritz v. Jenner, 166 Pa. 292; Lee v. Woolsey, 109 Pa. 124; Brownfield v. Hughes, 128 Pa. 194; Donley v. Dougherty, 174 Ill. 582; Neilson v. Hillside Coal & Iron Co., 168 Pa. 260.

OPINION BY MR. JUSTICE MESTREZAT, March 25, 1901:

This was an action by an employee against her employer to recover damages for alleged negligence in not keeping in repair certain machinery which caused the plaintiff's injuries. The only question for consideration here is whether the court below erred in not instructing the jury, that under the evidence in the case the verdict should be for the defendant.

The plaintiff, a girl of nineteen years of age, was employed by the defendant company as a feeder in its laundry at No. 1306 Filbert street, in Philadelphia. Her duty consisted in feeding washed goods to the mangle or ironing machine. While thus engaged, on January 21, 1898, in feeding a napkin to the mangle, her right hand was drawn into the machine and badly injured. She avers in the statement as the cause of action that the defendant " negligently permitted the said mangle to be in such a condition of nonrepair that the cylinders of said machine, instead of revolving with an even speed and regularity, as was necessary to the safety of the plaintiff, and as was their wont in proper order, revolved irregularly, now fast, now slow, in consequence of which " plaintiff was injured. On the trial, the defendant denied the allegation of negligence, and contended that the plaintiff's injuries were due to her own negligence. The learned judge submitted for the determination of the jury the defendant's negligence and the plaintiff's contributory negligence, and the trial resulted in a verdict for the

plaintiff. From the judgment entered on this verdict, the defendant appeals and assigns as error the action of the court in submitting the case to the jury. The determination of the question at issue requires a brief reference to some of the testimony produced at the trial.

The plaintiff in her testimony thus describes the manner in which the machine worked and her hand was injured: "About the third day I was on it I was seeing it took these fits and starts. You would be feeding on it as you would think all right, and the next thing you would know it would take a jerk and take everything you had in your hand, and if you didn't get away it would take in your hand. Sometimes it would be going fast and sometimes slow, and then it would take a sudden jerk and go fast again in a jerk. Q. Will you state whether or not it was when it took this sudden jerks of going fast that it drew your hand in? A. Yes, sir; it was." She then testified that she had notified the defendant's manager of the defective condition of the mangle, and that he promised to repair it and subsequently assured her that it had been fixed, that it was all right, and told her to resume work which she did. A half hour or less thereafter while feeding a napkin she was injured. Austin Maney, a witness for plaintiff, and a laundryman in the employ of the defendant company, testified that by direction of the manager he had adjusted the mangle and the bearing as well as he could on the occasion referred to by the plaintiff; that it was in very poor shape; that the pulleys were not of proper dimensions for a mangle of that kind; that the driver of the mangle was too short for the work it had to do, and that this continually heated the bearings and kept burning them out every half day or so; that the mangle would then have to be adjusted by tightening the adjusting screws; that this adjusting would have to be done some days fifteen or twenty times, and that this operation would make the machine jerk, and if the feeder were feeding a napkin in close and straightening it to get the wrinkles out, the machine would be just as likely to take her hands in as to take the napkin in; and that the guard was warped and bent out of shape. Smith W. Birch, a witness for the plaintiff and a machinist, testified substantially that the pulleys were not of proper dimensions for the mangle; that an equalizing rod which equalized the friction and regulated the

speed of the cylinder had been taken away; that it should not have been taken off as it was put there for the express purpose of keeping the bite between the rolls regular; that the belt which operated the mangle was in a perpendicular position when it should have been in an inclined position. Catharine Maher worked upon the mangle in question and she testified that "when it is regulated to run slow, suddenly it would start up and run fast, and pull in your work, and anything else that would be there to go in—most likely your hand. The mangle could be regulated to go very slow or fast, and sometimes when it would be regulated to run slow, all of a sudden without the head feeder or any one else regulating the mangle, it would run faster. Q. What would be the effect of that running fast? That was without any warning, I suppose? A. Yes, sir, and suddenly drawing in your work, and as I say, anything else— most likely your hand." Some of the defendant's witnesses testified on cross-examination that five other girls in the defendant's service had been injured at the same mangle.

The testimony on the part of the defendant flatly contradicted all the material statements in the plaintiff's evidence. This was true as to the condition and the motion of the machine, its liability to sudden acceleration of speed and the dangers incident thereto and the cause thereof, the necessity of notice to the feeders before an increased speed of the machine, and the liability of the perpendicular belt to cause the accident to the plaintiff. The manager denied that he ever had any notice or complaint that the machine was running irregularly, or that his attention was called to the machine the day of the accident. He testified that the mangle was in good condition.

A reference to the testimony shows that it was contradictory. If, therefore, the plaintiff's evidence disclosed a case of negligence on the part of the defendant, free from negligence on her own part, it was necessarily for the jury. If the plaintiff's witnesses were believed, the jury was justified in finding that, at the time of the accident, the machine was not in working order but in bad condition; the equalizing rod was missing; the belt was in the wrong position; the pulleys were too small; the guard was warped and unsafe; the driver of the mangle was too short, thereby causing the machine to jerk and the hand of the feeder likely to be drawn into the machine; the mangle

had to be adjusted some days fifteen or twenty times; that the speed of the mangle was not under the control of the head feeder as it should have been, and the sudden acceleration of speed was likely to draw in the hand of the feeder as well as the napkin; that it was the sudden increase of speed that drew the plaintiff's hand into the machine and thereby inflicted the injuries on the plaintiff. The unsafe condition of the machine, if the plaintiff's testimony is true, was known to the defendant; and not until after its manager had assured her that its defective condition had been remedied, did she, relying upon his assurance, resume her work.

As we have said, the defendant's testimony was in direct conflict with that of the plaintiff, and hence this case could not have been withdrawn from the jury unless the court had invaded the province of that tribunal. The testimony of the plaintiff and two of her witnesses was sufficient, if believed by the jury, to justify a finding that at the time of the accident the mangle was out of repair and that its defective condition occasioned the plaintiff's injuries. The theory of the learned counsel for the defendant seems to be that the plaintiff's hand could not have been drawn into the machine unless by inattention on her part to her duties, and hence by her negligence; and such was their contention at the argument in this court. This is but a theory, however, fully met and overthrown as shown by the verdict of the jury, by the evidence produced on the trial, and which we think was clearly sufficient to be submitted to the jury. We do not agree with the defendant's counsel that the only reasonable explanation of the manner in which the plaintiff's injuries were inflicted was inattention and carelessness in the performance of her work. Her duties required her to straighten out the napkin and press the wrinkles out of it before it was fed to the machine. This was done on a board on which the napkin was placed in order to push it between the cylinder and the roller, preparatory to, and immediately before, the napkin entered the machine. Her attention being directed to her work and her hands necessarily tightly pressed upon the napkin, it is conceivable that they might have been drawn into the mangle by a sudden jerk and increase of speed before it was possible for her to relax her hold upon the napkin which would be taken into the machine. In other words,

the sudden and greatly accelerated motion, unusual and unantici-
pated, might take the feeder's hands with the napkin into the
machine before the muscular contraction incident to the pres-
sure of the hands on the napkin could be relaxed, and they be
withdrawn from their danger.

The learned counsel cite, and evidently rely upon, Higgins v.
Fanning & Co., 195 Pa. 599, to support their position. There
it is said in the opinion of the court that the allegation of neg-
ligence finds no substantial support in the testimony of the
plaintiff and that "what caused the jerking or jarring, and
whether it was unusual in such machines, was not shown."
But here, as we have seen, the testimony of the plaintiff shows
that the jerks and sudden acceleration of speed were unusual
and caused by defective machinery which occasioned the plain-
tiff's injuries. The jerks and increased speed were so unusual
that if the story of the plaintiff is true, the manager's attention
was called to them, and he assured the plaintiff that the defects
in the machine that caused the irregularity of motion would be
remedied. Here, the testimony of the plaintiff showed negli-
gence; there, no such testimony was submitted by plaintiff.
Hence, the cases are clearly distinguishable.

The case was submitted to the jury under a clear, accurate
and very comprehensive charge by the learned judge of the
court below to which no exception was taken by the defendant.
We think the errors assigned to the points for charge have not
been sustained, and hence, the judgment is affirmed.